Good morning, your honors. John Lemon for Mr. Maloney. Your honors, Mr. Maloney should get a new trial for three reasons. First, the trial court seated a biased juror, a juror who repeatedly stated that he would be biased in favor of law enforcement and who never actually stated that he could be fair and impartial. Second, the trial court allowed the government to make three completely new arguments in its rebuttal closing and denied my request to make a new trial. And finally, the trial court refused to give a required instruction on character evidence, an instruction that specifically incorporates reasonable doubt. And I'd like to start with the first issue, which is the juror bias. And why don't we make it a fact that the defendant had ten peremptory challenges and never struck this juror? Well, candidly, your honor, I ran out. Well, that juror sat there while you made ten peremptory challenges. I think that it doesn't affect this analysis. Why? Well, because. If it was that bad a juror, why didn't we use one of the ten? Because there were other jurors that were worse, frankly. And the problem is this juror still never said that he would be fair and impartial. What do we make of this fact? How does that gauge this? Because what is the standard of review? Well, the standard of review for actual bias is manifest error, which roughly equates to an abuse of discretion. So given the fact that nobody ever peremptory challenged this, how do I determine the poor old D.J. had an abuse of discretion? Well, because I made a challenge for cause. And under this Court's two-step inquiry for an abuse of discretion in the United States v. Hinkson, the first step of that is to determine de novo whether the trial court identified the correct legal rule to apply. What legal rule did it fail to acknowledge? The legal rule from Gonzales, which is that doubts regarding bias must be resolved against the juror, not in favor of the juror. And here the trial court specifically said, many jurors say things like, generally, I believe law enforcement officers, because they are trained observers, they don't have a bias or a stake in the outcome. But don't you have the burden to show that the protective juror was actually biased? Well, the district court required. Isn't that what we said in Alexander? Well, Your Honor, the district court was required in the first instance to resolve doubts against the juror. Well, I understand that. But you had a motion. And as I understand it, you had a burden. And even if that were the law, which I assume the district court knew, it didn't seem to me that one could say you made up your burden. I mean, that's his or her discretionary decision to make, whether you met the burden. Well, I guess I'm confused as to what burden I needed to meet. I mean, the juror had to express that he was fair and impartial, and he never did that. Well, the trial court was required to resolve doubts against the juror, and the trial court didn't do that. Okay. I understand your argument. I just don't agree. Okay. Do you want to move on to a different argument? And what I'd like you to talk about, because your time is limited, the lack of luggage argument about the lack of serve rebuttal, you know, and the strength and the weakness of what your points are, that may be one of your best. So tell me why, though, you think there was prejudice to your client there. That's more of a factual inquiry or a factual issue, but specifically what happened is, from the very beginning of the case, opening statement, my client's testimony, the testimony of the character witnesses, it was very obvious what the defense theory was, that my client did not know that marijuana was in the truck. The government could have made the arguments that it reserved for its rebuttal in its first closing, and it was required to make those arguments in its first closing. Instead, it held back these arguments that had nothing at all to do with my closing argument and popped them for the first time. What do you mean it had nothing to do with it? Well, you can argue that it is in excess of what it might have had to do with it, but your closing argument was dead on. Honesty of Maloney, truthfulness of the testimony. Maloney's testimony was palpable, visceral. It was real. The government's never proved him a liar beyond a reasonable doubt. I'm quoting your words. Right. But the government didn't, the government could have made the arguments it made in its rebuttal in its first closing, and what it did was it created three new arguments from the absence of evidence and complex inferences. Now, wait a second. Let's take the first piece of evidence that you challenge, and that is the insurance certificate. That was your exhibit, was it? It was my exhibit. And it contained a date which, if the jury so found, could be determined to be inconsistent with your client's testimony at trial as to when he met Mr. Hernandez. Why is that not fair argument in reply to your claim to the jury that the government has not proven my client to be anything but an honest citizen to say, well, ladies and gentlemen, take a look at the evidence here. This particular piece of paper shows he was lying when he testified before you about when he met Mr. Hernandez. Your Honor, because if the government was going to make that argument, they should have made it in their first closing so they at least had a chance to make an argument. Why isn't that a fair reply to the door that you opened when, in your closing to the jury, you urged the jury to find that Mr. Maloney was credible? Because I opened the door in opening statement. Because I told the jury that my client was going to testify, and he was going to testify to the following facts. So your argument is that if the credibility of the defendant is at issue, that I'm supposed to rule as a matter of law that the government cannot, in rebuttal, come up with any further examples that he was not credible because that's been the issue all the way through. Is that your ruling? No, it's not. Because it seems to me these are just other examples of what the government talked about in their opening as well. And so it seems to me that where you want me to go is to put as an issue of somebody is really talking about credibility, you better bring up every example of how they weren't credible in opening because you can't do it in rebuttal. That's actually not what I'm saying. What I'm saying is I'm asking this Court to follow the Seventh Circuit, which has expressly said government counsel should not be allowed to develop new arguments on rebuttal. Well, that's exactly what I just got through saying. I'm trying to figure out why what you're arguing is different than what I said. What is the difference? Well, yours sounded a little bit more extreme. But if that's the same, then that's fine. That is precisely what I'm saying. Government counsel should not be allowed to develop new arguments on rebuttal. What is the difference in the argument if it's only arguments you're talking about? What's the difference of argument then? Because they made an argument in opening about how your client was not credible. Now they're just rebuffing your argument he was. The arguments didn't change. Because these were very complicated and prejudicial inferential arguments drawn from the absence of evidence or from specific exhibits where a certain aspect of the exhibit had never been argued before. Well, at least the insurance certificate was now an evidence. I guess that's why I'm thinking I'm not sure you're very strong on that. The luggage, I gather, was made up out of whole cloth, though, in this case, wasn't it? Right. The luggage came from left field. And importantly, if we want to go back to the actual movie that counsel was referring to, A Few Good Men, in that movie, the defense attorney actually had the temerity to ask the witness about the luggage on the witness stand. The government could have asked my client about the luggage when he was on the witness  But instead, he waits until his rebuttal closing to bring it up for the first time. Can you help me with a factual question? As I understand it, the 300 pounds of marijuana were found in part in a black plastic bag that was just sitting in the open on top of the bunk bed in the sleeper portion of the cab. That's correct. And the remainder was hidden in drawers or something in the sleeping area. There was a compartment underneath the bed, and almost all the marijuana was in that compartment under the bed. And that is the location where, if somebody was living in the truck on a long haul, one would reasonably expect to find some kind of overnight gear or clothing. Right. And Mr. Maloney testified that he had stayed overnight in the truck stop the night before, and after getting back in the truck, had not gone to the back of the cab. So what's improper in rebuttal closing argument when you've put credibility again in issue, and the whole question is whether or not Mr. Maloney knew that the marijuana was in the sleeping area, urging the jury to find, well, if that were the case, he would have found it if he, in truth, slept in that part of the truck. And whenever he put his gear in the cab, he couldn't have missed it, because it would either have been on the top of the bunk or in the place where he put his luggage. I think that's a wonderful argument for the government to make in their first closing argument. And that's consistent with the legislative history of the rule. But why isn't that? I mean, the evidence was all before the jury. This is not its argument. It's basically asking the jury to make a reasonable, common-sense conclusion from the nature of the evidence of how these drugs were smuggled. But it's rebuttal argument, and the legislative history of the rule specifically stated that the rule is drafted in the view that fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply. What do I make of the idea that the judge told the jury that rebuttal summation is only the argument of counsel and not evidence, and that the jury had the job of determining the facts, and the idea that I have 411 cases that say the panel presumes the jury follows the court's instructions? It doesn't go far enough in this instance because the government specifically misrepresented Mr. Maloney's testimony with respect to the learner's permit, where the government argued that the timing of the learner's permit, he got the learner's permit before he met with the guy that hired him to drive the truck. Mr. Maloney specifically testified that he told the guy at the meeting, the person who hired him to drive the truck, that he had a learner's permit, but he didn't already have the actual permit. And so there was a complete misrepresentation as to my client's testimony as to the I see I have three and a half minutes left. Do you want to save some time? I do. I actually wanted to address the third issue. Sure. Go right ahead. With respect to the issue of the character evidence, this is – there has not been any case in the Ninth Circuit or the Supreme Court that has affirmed the instruction that the trial court gave here, which is the former Ninth Circuit model. All of the Ninth Circuit cases and all of the Supreme Court cases state that there – that an instruction should be given on character evidence that incorporates the idea of reasonable doubt. And that was not done here. But as I understood the instruction, he gave what was in the standard Ninth Circuit instruction, which told the jury you must consider all of the evidence, including the character evidence. But he didn't mention reasonable doubt. But he gave a reasonable doubt instruction. He did, but it's two separate instructions. But we look at the instructions as a whole. So you can't convince me that he didn't tell the jury that the government had to weigh all the evidence and conclude by proof beyond a reasonable doubt that the elements of the crime had been removed. Well, I understand that. But no court has ever – no court in the Ninth Circuit or in the Supreme Court has ever held that a proper character instruction can omit all reference to reasonable doubt. Well, is the – we're reviewing this on abuse of discretion, aren't we? No, this is actually de novo. Why is it de novo? Because it's an issue of – it's a jury instruction based on a question of law. We have pretty straightforward ideas that in formulating jury instructions, I review for an abuse of discretion. Your Honor, as to jury instructions based on a question of law, the issue – Well, now, just a minute. We're not talking about a question of law. We're talking about the formulation of jury instructions. What jury instruction should be given? That's what you're arguing about here, isn't it? Well, it's a question of law. Aren't you arguing that the jury – that the court should have given a jury instruction they didn't give? Yes. Well, isn't that formulating the jury instructions? I guess I'm having a tough time. I'm really seeking some help here because I looked to find a de novo review and I couldn't find the right case nor even the right words for formulating jury instructions. Well, again, this is purely a question of law, whether the court must instruct, whether the court must give an instruction that incorporates reasonable doubt with character evidence. That is purely a question of law. But if the court – I guess our case law says that we look at the instructions as a whole in order to determine whether the jury was properly instructed with correct legal instructions. And I find earlier in the packet of jury instructions the standard Ninth Circuit instruction on reasonable doubt. And then I find an instruction that tells the jury that it should consider all of the evidence, including the evidence of character in making the assessment and in giving whatever weight the jury is going to give. Why doesn't that meet our standard of correct instruction? Then what you're really arguing about is sort of the formulation or the sequence of the instruction which we review for abuse of discretion. Because this is a different type of evidence entirely. These are not recipient witnesses. This is something that the jury is not necessarily going to understand why this evidence is being presented. It is a limited and discrete form of evidence, unlike anything else the jury hears. That's why a separate – an instruction that incorporates character evidence and reasonable doubt is required. That's what the Supreme Court said in Nicholson. That's what this Court said in Smith and Machado. And, again, argument without the instruction, or just my argument, without a specific instruction that draws a nexus between character evidence and reasonable doubt carries less weight than a jury instruction because arguments are usually billed in advance to the jury as matters of argument and not evidence. And this Court in the United States – I'm sorry, Wade v. Calderon, 1994. So I see I have 30 seconds left. Actually, you're over by 30. When that red light comes on, it's just like when the police try to pull you over. But I'll give you a minute on rebuttal. Let's hear from you. Thank you, Your Honor. Thank you, Mr. Lemon. May it please this Court, Steve Miller for the United States. I'd like to begin by placing the evidence in perspective. And it is that nothing that the defendant testified about was inconsistent with the government's evidence. There was no dispute by the defendant that he drove a tractor trailer with his name on both sides of the door and that there was marijuana right behind him in the sleeper compartment. And with that, I'm going to address the rebuttal argument. The United States did not raise a new argument. It argued the evidence that was at trial. A rough outline of the arguments was that the United States, and it was my argument, argued that the government's evidence proved that he knew and that the defendant's testimony should not be believed. The outline of the defendant's argument was that the defendant's testimony shows that he did not know and that the government's proof is not beyond a reasonable doubt. And the rebuttal argument was in direct relation, argued evidence that was presented. Where did you have lack of luggage in the record? In the case, there was no testimony that there was luggage. And there wasn't any testimony there wasn't luggage. Exactly. There was no testimony one way or the other. Right. And this was not raising a new argument. In this case, it was arguing the absence of evidence in the record. And it was an either-or argument that there are two options. The defendant had luggage. The defendant didn't have luggage. If he didn't have luggage, then his testimony, I went on a 10-day road trip and went to Las Vegas, dropped off Clorox, slept in that same sleeper compartment for one night, then went down to El Centro or Calexico and stayed in a hotel. Yeah. And this was his first-time drive with Mr. Hernandez, wasn't it? Right. But then if there was luggage, where would he have likely put it? He would have put it in the sleeper compartment that he had used on his trip to Las Vegas. So why didn't you ask him a question on didn't he take the stand? I think he did. Yes, he took the stand. You could have cross-examined him on this point that he had no luggage. Why did you not do that? Because I didn't know the answer to the question, and that's perfectly possible. All right. And then why didn't you raise this argument in your first argument on a summation? First opening. First opening, yes. Because I don't believe that I needed to. Weren't you sandbagging a bit to wait for rebuttal? Yes, I was. Well, that's not nice, is it? Let me ask you this. Let me ask you, what do I get? I mean, my worry about the whole thing is that it seemed to me Maloney testified Hernandez called him to make a short run to Las Vegas. That's only a four-hour drive from Riverside. Why in the devil would he want luggage? Because then he testified. I mean, it was only after he got over to Las Vegas that he goes on and goes with other things. He didn't know he was going to Las Vegas when he went. He testified Hernandez called him to make a short run to Las Vegas. But it wasn't a short run. It was going to be an overnight run. It's a four-hour drive, isn't it? Well, yes, but also remember that there was some activity where he was obtaining other documentation before he went to Las Vegas, and that when he went to Las Vegas, then he slept in the sleeper compartment. Right, but the marijuana may have been put on in El Centro. Is that where he went before he made the run to Blythe? Well, we don't know where the marijuana was put in. Most likely it was put in when he went down to El Centro. But if it was put in in El Centro, he was not staying in the sleeper compartment. He was in a motel. His theory was Mr. Hernandez put it in there, and he was just making this short drive to Blythe. That is if you take at face value the defendant's testimony. I mean, one thing I gather when he was stopped at the checkpoint, he didn't say, oh, no, you can't search my truck. He was quite happy to let them search, right? He voluntarily consented, which is sort of consistent with he really didn't know what was there because obviously if he knew, it was going to be found in an instant. But also the record showed that the Border Patrol agent went up to him and said, may I inspect your car with my narcotics detector dog? And he appeared deflated and said, well, you're going to anyway. Yes, yes, you can. You're going to anyway. But in this case, the United States didn't raise any new arguments. You went through what the defendant said. It didn't change, that he lacked credibility. But what your facts to support your argument bring up this luggage, which was never in the record. That's what concerns me. What about, you know, this Ninth Circuit case of Hine v. Sullivan, 2010? You're familiar with that? These are the – where the court has decided what the factors a court should consider where the accusation like here is that the government made an improper closing argument. And the factors are whether the prosecutor misstated the evidence, whether the judge admonished the jury to disregard the improper argument, whether defense counsel opened the door, whether defense counsel had adequate opportunity to rebut the comment, and the prominence of the comment in the context of the entire trial. I mean, now, if you look at those factors, there are a number of those that concern me about what the government did here. Well, what the government did here was argue the evidence that was available in the record. But this lack of luggage was not in the record. That's what concerns me. And the – You made this whole point about the few good men and the movie. Yes. I mean, it wasn't just an isolated comment. You made, where's the luggage? Where's the luggage? Has the Ninth Circuit ever adopted the Hines factors? Not that I'm aware of. But in this case, the main argument is that the defendant argued, and in the context of the trial, that since his testimony was not inconsistent with any of the government evidence, that by mere virtue of him saying, I didn't know it was in there, that's reasonable doubt. And then my rebuttal argument was to show why his testimony was not credible, not reasonable. We went through the different things that were argued by the defendant in his closing argument that his testimony is palpable, visceral, real. What Judge Smith forgot to add was that in the beginning of the argument, the defendant argued, told the jury, Mr. Maloney's testimony, he is the most important witness in this case, and his testimony was reasonable and credible. That is at 361 of the excerpt of records. And then what Judge Smith neglected to also add was the comment where the defendant said, there was no gotcha moment. And in that case, the United States is entitled to call the jury's attention to the evidence that was presented at trial and point out that if there is an absence of evidence, just as in the few good men, what is it about these circumstances where there's something wrong with this picture? And that was perfectly permissible to establish that the defendant's statement, I didn't know it was in there, this is how it probably got in there. And the defendant actually, in his closing argument, when he was saying, his testimony was corroborated, and he brought out the documents, the documentary evidence, proof of insurance, and then argued because other documents were missing. So when the defendant is saying that, ladies and gentlemen of the jury, the government did not prove a liar beyond a reasonable doubt, there's no gotcha moment, then in rebuttal, the United States is entitled to point the inferences from the record that shows that his testimony is unreasonable and should not be believed. And in this case, what was not there established in the defendant's testimony should not have been. But you could bring in a whole boatload if it's like, you know, it's always like proving a negative. I mean, you could have raised 100 points of what was not there. Yes. I mean, of course, the defendant has no obligation to put on any evidence. I mean, the burden is clearly on the government in this case, is it not? Absolutely. And the defendant has absolute right not to put on anything. He has an absolute right to present what evidence that he desires. But when he avails himself of the right to put on what he desires, the United States is not obligated to take that at face value. And the United States is entitled to. No, but you've got to make arguments from which an inference can be based on something in the record. Yes. And you can't just make up facts that are not in the record. I didn't make up facts. I said that there was no evidence of luggage. If there's luggage, it would have been put in the sleeper compartment that he had spent the night with and that him saying Mr. Hernandez or someone must have snuck the marijuana in the back of the truck that has my name on it in the sleeper compartment where I sleep and Mr. Hernandez must have taken all the documentation that I normally would have had as a truck driver, then had there been luggage, it would have been put there right on the bunk where the marijuana was under some trash bags. I mean, isn't it true that the jury actually sent back a question? They wanted to see the exhibit that listed the contents of that truck. And it wasn't in the record. Is that right? I mean, doesn't that infer that the jury obviously was interested in your argument about, yeah, they wanted to see if it listed or not? I don't. The only one that stands out in my mind is the jury note where they said, may we have a transcript of the testimony. Then we had a long discussion about that. No, I thought. But the jury. Mr. Miller, I thought they asked for a specific exhibit, which. Exhibit K. Yeah, exhibit K. Oh, that was. And as a letter, it would have been a defense exhibit. What is it? I don't remember. The jury sent out a note asking for exhibit K, and you're the traveler. You have no idea what they were asking for. Because it was not an exhibit that was entered into evidence. Oh, it was an exhibit that was marked and never entered. The United States exhibits. No, no, I understand that. I understand the letter. It was. It would have been a report. It was an exhibit that was not entered into the record and had been asked for by the defense. Usually it's like a report where during cross-examination the defense shows the agent's report or a report and say. Was there testimony by the border patrol agent that there was no paperwork that you would normally expect a commercial truck driver to carry? By the DEA agent. By the DEA agent. Okay. And I don't think. And that included what? The manifest, the driver's mileage log. And that there was, that the only evidence that was found documentary in the truck was the registration of the trailer, what was being hauled, and then a driver's record of Maloney. But that there was. The DMV driver's record? Yes. What was he doing with that? I don't know, but the fact that. The printout of the DMV computer. That there was something with. If I may take just a moment. Yeah, if you would. Oh, I guess I looked at it in the records. And the. During the defendant's case, and this is on page seven of my brief, the agent, I mean the defense called DEA agent Michael Ortiz. And he testified that the DMV records reflected that the truck was sold to Robert Hernandez by Juan Alvarado. And that he also testified at the time of Maloney's arrest, he searched the truck for documents. And recovered the registration document for the trailer for the name of Ruben Hernandez Delgado. And a copy of Maloney's driver's history. And Maloney's actual driver's license. And that agent Ortiz found no other documentation reflecting the registration of the truck, proof of insurance, trip logs, cargo manifest, or gas receipts. So there was, in essence, the jury was told, if this was truly a legitimate commercial truck driving operation, the commercial truck driver didn't have what he's required to carry when he's hauling cargo. Yes, and I also raised that during my cross-examination of Mr. Maloney. You didn't have this document, that document, the other document. In his closing argument, he said, well, since Mr. Hernandez is responsible for that, he could have taken it out of it without Mr. Maloney knowing. And then my argument was, well, if he was going to do this without Mr. Maloney knowing that there was marijuana in the sleeper compartment with a truck that has his name on it, then he was intending to have a successful trip. And that had he reached the checkpoints, it wouldn't have been just the DEA or Border Patrol checkpoints, there's CHP weigh stations. Right. Where he has to produce all that document. Exactly. So when you're a truck driver, license registration, and what's your cargo manifest so I can match it up with the weighing. And there was none of that. And let me see your trip log so I know that you're not driving more than 12 hours a day and all the stuff that they check. Yes. So that also was an argument that it was unreasonable for the jury to credit Mr. Maloney's statement. He had no documentation, there was no evidence of any luggage. Basically you're arguing by inference that the jury would have to believe that the whole purpose of this trip was nefarious and not a legitimate commercial delivery of Clorox or whatever he says he carried. Yes, but the other part, the main focus of that was that if Mr. Maloney is saying I'm doing this legitimately and this is my explanation as to how that marijuana got into the trunk of my name on it, that it is unreasonable for the jury to believe and lend credence to that statement because he didn't have these documents. And if Mr. Hernandez snuck the marijuana in without Mr. Maloney knowing and put it on the truck, on the bunk, that he would have reduced the likelihood of a successful venture if he deprived Mr. Maloney of all his documentation, documents and documentation that he would have needed in order to get through this check point. Through the check point. Okay. I think we have the argument in mind. You're over your time, too. Very well. Thank you, Mr. Miller. Mr. Lemon, I'll give you a minute in rebuttal. Thank you, Your Honor. I'd like to start with the question that Judge Gilman asked government counsel just a moment ago when he said, weren't you sandbagging a bit? And the answer, and I appreciate the government's candor, was yes, I was. This was fundamentally a tactical decision and it was over the line. With respect to arguments that are, new arguments that are made based on exhibits that are already in evidence, I'd just like to point out that in the Second Circuit case, the government did exactly what Mr. Miller did here. The government lawyer made an argument for the first time in his rebuttal closing based on an exhibit that the defendant had put into evidence, but nothing had ever been commented on that aspect of the exhibit before. The Second Circuit said that was improper, but the trial court gave surrebuttal, which is what I asked for, and the Second Circuit said that if the trial court hadn't given surrebuttal, it would probably reverse. So I just wanted to point that out. And finally, with respect to the Hine factors, Hine v. Sullivan, the weight of the evidence factor number one, this was a closed case. The jury operated. You agree with counsel that Ninth Circuit has never adopted the Hine factors? Your Honor, unless I had made a grievous error, I believe Hine is a Ninth Circuit case, unless I accidentally wrote Ninth Circuit when I meant something else. But I have this in my brief as a Ninth Circuit case. Well, I believe it is a Ninth Circuit case. Well, I'll be fair. I just wanted to make sure that we had put those factors as what we look at, because there are a lot of cases where we don't suggest those are the factors we review. Well, I believe that this specifically, this case specifically addresses factors when the court determines that an improper comment has been made by government counsel. It does, but if you look at page 13 of the opinion, which I think is 601 Fed 3rd, I don't know, I guess I have a Lexis printout. Anyway, yeah, okay, 601 Fed 3rd at 914. We're talking about the application of those factors in the context of the Brady prejudice standard. So, I mean, we can argue about whether or not we adopted it or not, but we clearly were citing to them as factors that could be considered. All right. Thank you very much. The case just argued is submitted, and we are in adjournment for the week. All rise.
judges: Gilman, Tallman, Smith